FARLEY, Judge:
Before the Court is the appellant’s application, pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), for attorney fees and expenses in the amount of $7,417.76. The Secretary has filed a response opposing the granting of fees and the appellant has filed a reply to the response. For the reasons that follow, the Court will grant the appellant’s application.
I. Background
The appellant filed an appeal from a November 4, 1998, decision of the Board of Veterans’ Appeals (BVA or Board) denying his claim for dependents’ educational assistance benefits for educational courses taken from September 9, 1992, to April 13, 1994. In October 1999, prior to the filing of a record on appeal, the parties filed a Joint Motion to Dismiss (Motion) which stated:
The terms upon which the parties agree this appeal is to be dismissed are contained in the attached Stipulated Agreement. ... The parties have resolved, to their mutual satisfaction, the issues raised by this appeal and aver that ... (2) this is not a confession of error, by the Secretary, under the provisions of U.S. VetApp. R. 5 [“The Court may suspend proceedings after an appeal has been filed ... by motion of the Secretary for reasons of confession of error”]; and (3) this agreement disposes of the case on appeal.
Motion at 1-2. The attached Stipulated Agreement (Agreement) provided:
1. [The Secretary] agrees to award dependents’ educational assistance benefits for courses taken during the period from September 9, 1992, to May 21, 1993, and from September 9, 1973[sic] to April 13, 1994, pursuant to 38 C.F.R. § 21.4131 (1999).
3. [The Secretary] does not admit that any error was committed by the Department of Veterans Affairs or any of its employees in the adjudication of the claim which is the subject of this appeal.
4. Appellant agrees that his pending appeal in the United States Court of Appeals for Veterans Claims, U.S. Vet. App. No. 99-364, shall be dismissed, with prejudice, as to all issues addressed by the BVA in its November 4, 1998, decision following execution of this agreement.
5. The parties agree that this agreement is entered into for the purpose of avoiding further litigation and the costs related thereto. Both parties agree that the settlement is based on the unique facts of this case and in no way should be interpreted as binding precedent for the disposition of future cases.
Agreement at 1.
Subsequent to the filing of the Motion, the Clerk of the Court, on behalf of the Court, granted the Motion in an order of dismissal dated October 12, 1999, which stated:
The parties have moved jointly to dismiss this appeal on terms agreed upon. See Rule 42 of the Court’s Rules of Practice and Procedure. It is
ORDERED that the motion is granted and this appeal is dismissed. Under Rule 41(b) [“An order on consent dismissing or remanding a case will also constitute the mandate”], this order is the mandate of the Court.
The appellant then filed an application with the Court for an award of attorney *237 fees and expenses, under EAJA, for work done on his behalf in the bringing of the appeal to this Court and in obtaining the settlement and dismissal of the appeal. Application (Appl.) at 7.
II. Analysis
The Court has jurisdiction to award reasonable attorney fees and expenses pursuant to 28 U.S.C. § 2412(d)(2)(F). In order for the Court to have jurisdiction over an EAJA application it must be filed within the 30-day period set forth in 28 U.S.C. § 2412(d)(1)(B). In order to be eligible for an EAJA award, the application must contain: (1) a showing that the applicant is a prevailing party within the meaning of EAJA; (2) an assertion that the applicant is a party eligible for an award under EAJA because his or her net worth does not exceed two million dollars; (3) an assertion that the position of the Secretary at the administrative level or in litigation was not substantially justified; and (4) an itemized statement of the fees and expenses sought, supported by an affidavit from the applicant’s counsel. See 28 U.S.C. § 2412(d); Chesser v. West, 11 Vet.App. 497, 499 (1998); Bazalo v. Brown, 9 Vet.App. 304, 308 (1996) (en banc), rev’d on other grounds sub nom. Bazalo v. West, 150 F.3d 1380, 1384 (Fed.Cir.1998).
The appellant has met the jurisdictional prerequisites of EAJA in that he filed an application within the 30-day time limit. See Bazalo, 150 F.3d at 1383. In terms of the appellant’s eligibility for an award, the Secretary does not contest the appellant’s status as a prevailing party, and the Court agrees that pursuant to the terms of the settlement, the appellant is a prevailing party. See Maher v. Gagne, 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (prevailing party status may be established by the procurement of a favorable settlement); see also Cervantez v. Whitfield, 776 F.2d 556, 562 (5th Cir.1985) (when comparing the claims raised in the complaint with the relief obtained in the settlement, if the plaintiff is found to be a clear “winner,” prevailing party status is established); Heeren v. Jamestown, 817 F.Supp. 1374, 1376 (W.D.Ky.1992) (prevailing party status is established in a settled case where “the lawsuit acted as a catalyst in prompting the defendant to take the desired action”). Comparing the relief sought in this matter and the relief obtained through settlement, we find that the appellant obtained complete success in his desired objective on appeal; i.e., he was awarded all of the benefits previously denied. Thus, we find that the appellant was the “clear winner” in the underlying matter. See Cervantez, supra. In addition, the Agreement provided for the award of benefits based upon a regulation that became effective after the date of the November 1998 BVA decision and indicated that it was entered into to avoid further litigation. See Agreement at 1. These factors, conceded by both parties, clearly establish that the appellant’s “lawsuit,” or appeal, was a necessary step in bringing about the result desired, and that the Secretary did not act gratuitously in settling this matter in the appellant’s favor. See Heeren, supra; see also, e.g., Citizens Coalition for Block Grant Compliance v. Euclid, 717 F.2d 964 (6th Cir.1983). Therefore, we find that the appellant is a prevailing party pursuant to EAJA.
The Secretary also concedes that the appellant is a party eligible for an award under EAJA, and does not contend that special circumstances exist that would make an EAJA award unjust or that the hours claimed or hourly rate sought are unreasonable. The Secretary argues, however, that payment of attorney fees and expenses is barred because his position was substantially justified.
A. Substantial Justification
Once an appellant has alleged a lack of substantial justification, the burden shifts to the Secretary to prove that VA was substantially justified in its administrative and litigation positions. See Locher v. Brown, 9 Vet.App. 535, 537 (1996); Bazalo, 9 Vet.App. at 309. The Secretary argues that the citation to the 1999 amend *238 ed version of 38 C.F.R. § 21.4131 in the Stipulated Agreement, which reflected a regulatory change in law, was the sole catalyst for the settlement. The appellant argues that the Secretary’s position at the administrative level was not substantially justified and that the errors in the Board’s decision would have warranted reversal regardless of the subsequent regulatory change in law. In support of his position, the appellant has presented a copy of a draft motion for reversal prepared by his attorney and forwarded to counsel for the Secretary at the early stages of settlement negotiations. The Secretary admits that this document was sent to counsel for the Secretary, but urges this Court to limit its inquiry concerning substantial justification to the record created in this Court, as it does with respect to the adjudication of EAJA applications in cases that have been remanded. See Jackson v. West, 12 Vet.App. 422, 426 (1999) (holding that the Court cannot consider in its determination regarding ^substantial justification any allegations of error not contained in the Court’s remand order); see also Rhodan v. West, 12 Vet.App. 55, 58 (1998); Locher v. Brown, 9 Vet.App. 535 (1996); Dillon v. Brown, 8 Vet.App. 165 (1995); Olney v. Brown, 7 Vet.App. 160 (1994).
This Court has not previously addressed what evidence is to be reviewed in the determination of substantial justification in settled cases. However, in Pierce v. Underwood, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), the Supreme Court specifically refused to limit the factors that a court can consider in making a substantial justification determination in a case that had been settled:
We reach, at last, the merits of whether the District Court abused its discretion in finding that the Government’s position was not “substantially justified.” Both parties argue that for purposes of this inquiry courts should rely on “objective indicia” such as the terms of a settlement agreement, the stage in the proceedings at which the merits were decided, and the views of other courts on the merits. This, they suggest, can avoid the time-consuming and possibly inexact process of assessing the strength of the Government’s position. While we do not disagree that objective indicia can be relevant, we do not think they provide a conclusive answer, in either direction, for the present case.
Respondents contend that the lack of substantial justification for the Government’s position was demonstrated by its willingness to settle the litigation on unfavorable terms. Other factors, however, might explain the settlement equally well — for example, a change in substantive policy instituted by a new administration. The unfavorable terms of a settlement agreement, without inquiry into the reasons for settlement, cannot conclusively establish the weakness of the Government’s position. To hold otherwise would not only distort the truth but penalize and thereby discourage useful settlements.
487 U.S. at 568, 108 S.Ct. 2541.
Consistent with the Supreme Court’s holding in Pierce, this Court established the following standard to determine whether the position of the Secretary was substantially justified:
[T]he VA must demonstrate the reasonableness, in law and fact, of the position of the VA in a matter before the Court, and of the action or failure to act by the VA in a matter before the VA, based upon the totality of the circumstances, including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties before the Court.
Stillwell v. Brown, 6 Vet.App. 291, 302 (1994). “[Reasonableness is determined by the totality of circumstances, and not by any single-factor approach.” Id.
At oral argument, the Secretary pointed to the language of EAJA in support of his position that the Court is authorized to *239 look only to the parties’ submissions before this Court during the substantive stage of the proceeding in determining whether the United States’ administrative or litigation position was substantially justified. Section 2412(d)(1)(B), title 28, U.S.Code, provides, in pertinent part, “Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based ) which is made in the civil action for which fees and other expenses are sought.” (Emphasis added.) Focusing selectively on the language that the determination shall be made “on the basis of the record ... which is made in the civil action for which fees and other expenses are sought,” the Secretary took the position at oral argument that this language conclusively supported his position that this Court is precluded from reviewing evidence not developed in the action before this Court. It is not surprising that the Secretary offered no caselaw supporting his interpretation of that language, or that the Court could find no such precedent. That subsection specifically states that the “record” includes “the record with respect to the action or failure to act by the agency upon which the civil action is based.” 28 U.S.C. § 2412(d)(1)(B). We find that the plain meaning of that language necessarily includes the record developed at the Board of Veterans Appeals and the regional office (RO) with respect to the claim appealed to this Court. Moreover, this reading of the statute is consistent with the Supreme Court’s mandate that a court must look beyond the terms of a settlement agreement in considering the issue of substantial justification. Pierce, 487 U.S. at 568, 108 S.Ct. 2541.
The logic of this conclusion is inescapable when one considers the context in which settlements are negotiated. When an appellant alleges two or more errors in a BVA decision denying a claim, and the Secretary agrees that the Board did err in at least one respect that would warrant a settlement, continued pursuit of the second allegation of error often becomes unnecessary. Cf. Fletcher v. Derwinski, 1 Vet.App. 394, 397 (1991) (“A remand is meant to entail a critical examination of the justification for the decision. The Court expects that the BVA will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case.”); see also Zarycki v. Brown, 6 Vet.App. 91, 101 (1993) (“[I]n view of the need for remand for readjudication, there is no need for the Court to address [the appellant’s additional allegations of error in the BVA decision] at this time.”); Gaines v. West, 11 Vet.App. 353, 360 (1998) (noting that, in light of the errors in the BVA decision requiring remand, there was no need for the Court to address the appellant’s additional arguments). Why then would either party waste their own time and effort, not to mention judicial resources, pursuing an issue if a settlement agreement has already been reached? If we were to restrict review to the parties’ settlement agreement, the only answer would be an unacceptable one: to ensure (or prevent) an award of EAJA fees.
In a case such as this, where the parties have agreed to a settlement, there is simply no reason for the parties to negotiate, agree to, and present to the Court all possible reasons for settlement. All that is relevant to the Court is that the parties have reached a settlement agreement. See Hines v. Brown, 7 Vet.App. 309, 311 (1994) (“When the parties before the Court have reached a settlement, Court Rule 42 requires dismissal of the claim because a case or controversy no longer exists”); Bond v. Derwinski, 2 Vet.App. 376, 377 (1992) (per curiam order) (motion to dismiss predicated on a settlement agreement requires Rule 42 dismissal because “[w]hen there is no case or controversy, or when a once live case or controversy becomes moot, the Court lacks jurisdiction”). To have entitlement to an EAJA award hinge solely upon whether or not an alie- *240 gation of error is contained in a settlement agreement or a court dismissal order would be to discourage or prevent settlements and invite protracted and prolonged litigation. As policy and practice, such a result would be inconsistent with Pierce, 487 U.S. at 568, 108 S.Ct. 2541. The reason the parties have agreed to settle a particular matter, whether stated or unstated, does not necessarily define the limits of a court’s inquiry into allegations that the administrative or litigation position of the United States was not substantially justified. See Pierce, supra.
B. Entitlement to Fees
There are three predicate requirements to the Court’s granting an EAJA application that are pertinent in this case: (1) The Court must find that the party opposing the United States is a “prevailing party”; (2) there must be an allegation by the appellant that the government’s position was not substantially justified and there must be no Court finding to the contrary; and (3) there must be no Court finding that there are circumstances that would make an award against the government unjust. See Elcyzyn v. Brown, 7 Vet.App. 170, 174 (1994). A court’s finding that each of these predicate requirements has been met “operates as a one-time threshold for fee eligibility.” Commissioner v. Jean, 496 U.S. 154, 160, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). Once the claimant crosses this statutory threshold, “[i]t remains for the district court to determine what fee is ‘reasonable.’” Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In making the threshold determinations as to statutory entitlement, the Court may, indeed must, consider allegations that the Secretary’s position was not substantially justified at the administrative level and/or during litigation. As noted above, such allegations, when made, shift to the Secretary the burden of proving that his administrative and litigation positions were substantially justified. See Locher and Bazalo, both supra. In determining whether the Secretary has met this burden, the Court will follow Stillwell:
The Supreme Court also noted that “a position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.” Underwood, 487 U.S. at 566 n. 2, 108 S.Ct. 2541.
[T]he VA must demonstrate the reasonableness, in law and fact, of the position of the VA in a matter before the Court, and of the action or failure to act by the VA in a matter before the VA, based upon the totality of the circumstances, including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties before the Court.
6 Vet.App. 291, 302 (1994).
The appellant concedes that the Secretary’s position at the litigation phase of this proceeding was substantially justified, but has asserted that his position at the administrative level was not. The appellant argues that the Secretary’s position at the administrative level was not substantially justified because the regulation relied upon by the Board (38 C.F.R. § 21.4131 (1997)) was inconsistent with the statutory framework and Court precedent invalidating a similar regulation. See 38 U.S.C. § 5113(a); Bernier v. Brown, 7 Vet.App. 434, 437-38 (1995) (invalidating a regulation denying retroactive vocational rehabilitation program benefits to veterans who received benefits under another VA education or training program during any period for which retroactive benefits were sought; 38 C.F.R. § 21.282(b)(2)(ii) (1994)). The appellant also argues that the Secretary’s position was not substantially justified because the Board failed to address whether the appellant had shown good cause to excuse delay in submitting a complete claim for educational assistance *241 benefits. See 38 C.F.R. § 21.3032(b)(3) (1997).
The Secretary maintains that his position at the administrative level was substantially justified because the Board’s denial was based on then existing and controlling regulations, and that he entered into the Agreement solely because of a change in law (see 64 Fed.Reg. 23772 (May 4, 1999), codified as 38 C.F.R. § 21.4131 (effective July 1999)) subsequent to the issuance of the Board decision denying the appellant entitlement to benefits. Compare 38 C.F.R. § 21.4131 (1998) with 38 C.F.R. § 21.4131 (1999). The Secretary’s response to the appellant’s EAJA application defended the Board’s rebanee upon then current law, but did not address whether the BVA opinion was deficient in any other ways. At oral argument, the Secretary made much of the fact that the appebant first articulated in his reply to the Secretary’s response to his EAJA application his argument that the Secretary’s position was not substantially justified because of the Board’s failure to address the “good cause” provision of 38 C.F.R. § 21.3032(b)(3). The Court notes, however, that the appebant’s obligation in his initial EAJA appbeation is merely to allege that the position of the United States was not substantially justified. See Bazalo, 150 F.3d 1380. After the appellant makes such an allegation, the burden to prove substantial justification shifts to and remains with the Secretary. See Bazalo, 9 Vet.App. at 309. Moreover, the Secretary admitted at oral argument that he was aware of the appebant’s position that such an error was committed by the Board. Both parties represented to the Court at oral argument that, prior to entering into the settlement agreement, the appebant’s attorney had forwarded a draft motion for reversal that set forth, inter aba, the appebant’s argument regarding the “good cause” provision of 38 C.F.R. '§ 21.3032(b)(3). Additionaby, the Court notes that had the Secretary felt that he had been denied the opportunity to respond to the appellants abegations, he had ample opportunity to seek leave of the Court to file a supplemental memorandum.
While the merits of this claim was pending before this Court, there were no pleadings filed, no joint motions for remand, and no Court remand. The matter was resolved by settlement, a settlement that provided the appellant all of the benefits he sought on appeal. Although there was the Joint Motion to Dismiss, with an attached Settlement Agreement, and a Court order dismissing the case pursuant to the Motion, none of these documents specifies the bases for the settlement, other than a statement that the Agreement was entered into “for the purpose of avoiding further litigation and the costs related thereto,” which is standard boilerplate incorporated in most settlement agreements. In addition, as is also typical in settlement agreements of this kind, the Motion specificahy states that the Secretary does not confess any error. Thus, if we were compelled to look only to the settlement documents filed with this Court, we might have found that the Secretary had met his burden of establishing that the position of the government was substantially justified, because there would be no evidence before this Court to the contrary. However, in light of the Supreme Court’s decision in Pierce, supra, we are not so compelled. In fact, we can, and must, look beyond the Motion, Agreement, and Court order to determine whether the position of the United States at the administrative level was substantially justified.
The Court agrees with the Secretary’s contention that the Board’s rebanee upon the provision of 38 C.F.R. § 21.4131 prohibiting the payment of benefits prior to one year from the date of the receipt of the enrohment certification, as it was in effect at the time the Board rended its decision, was substantially justified. See, e.g., Clemmons v. West, 12 Vet.App. 245, 247 (1999). However, that does not end *242 our inquiry. The appellant has argued specifically that the Board erred in not addressing the potential applicability of the “good cause” provision of 38 C.F.R. § 21.3032(b)(3) to the appellant’s claim. The Secretary has not addressed that contention.
The Board’s November 4, 1998, decision recites the following findings of fact in their entirety:
1. All evidence necessary for an equitable distribution of the veteran’s claim has been developed.
2. The appellant submitted a claim for dependents’ educational assistance for courses taken from September 4, 1991, to May 22, 1992, which was received on February 24, 1992. The enrollment certification completed by the appellant’s school for that period was received on the same day.
3. On April 13, 1995, and April 24, 1995, VA received electronically enrollment certifications for courses taken by the appellant from November 19, 1991, to May 19, 1995, which included enrollment certifications for courses taken during the period from September 9, 1992, to April 13,1994.
Harold E. Cullens, BVA 96-39766, at 3 (Nov. 4, 1998). As noted by the Board, at the time of its decision 38 C.F.R. § 21.4131 provided that the commencement date of an award of educational assistance benefits shall be the latest of the following dates:
(1) Date certified by school or establishment under paragraph (b) or (c) of this section.
(2) Date 1 year prior to date of receipt of the application or enrollment certification, whichever is later....
(3) The later of the following:
(i) The effective date of the approval of the course, or
(ii) One year before the date VA receives the approval notice.
(4)Date of reopened application under paragraph (d) of this subsection.
38 C.F.R. § 21.4131(a) (1997).
The Board acknowledged that the appellant had been awarded educational assistance for courses taken prior to September 9, 1992 (Cullens, BVA 96-39766, at 5) (i.e., for courses taken from September 4, 1991, to May 22, 1992). We must presume from the Board’s recitation of facts noting only one application date, i.e., February 24, 1992, and the fact that the appellant was awarded benefits for courses taken from September 1991 to May 1992, that the RO’s November 1995 award was based upon the appellant’s February 24, 1992, application. Had the submission of additional enrollment certificates in April 1995 been considered by the RO or the Board as a new or reopened claim for benefits, the earliest possible dates the RO could have awarded benefits to the appellant would have been one year prior to April 1995. Thus, the record before us (and that was before the Board) demonstrates that the appellant had a claim for education benefits pending since February 1992. Because the veteran had failed to continue to submit enrollment certificates between February 1992 and April 1995, his application was not complete. The reason for the appellant’s delay in submitting his enrollment certificates is not in dispute: he did not continue to submit enrollment certificates because of a delay by VA in the adjudication of a claim for service connection for the cause of his father’s death. The Board noted:
The Board sympathizes with the appellant’s contention that as he was not notified of his entitlement to dependents’ educational assistance until January 1995, due to delay by VA, and that he should not have been expected to file forms years before that date, when his entitlement to the benefit had already been denied by VA. However, the Board is not permitted to decide the appellant’s claim in equity, and is con *243 strained to follow the express mandate found in the regulations.
Cullens, BVA 96-39766, at 5.
However, because the appellant’s claim had been pending (or was at least deemed so by the RO), it is reasonable to conclude that the Board should have considered whether the appellant’s claim was “incomplete,” and thus, whether the time limit in which he was required could have been extended for “good cause shown.” See 38 C.F.R. § 21.3032(b)(3) (1997) (“When a claim is incomplete, time limits within which a claimant or beneficiary is required to complete the claim through the submission of evidence, documents or other information may be extended for good cause shown.”). Even though the appellant had raised what the Board considered equitable arguments, the Board did not discuss whether good cause was shown to justify the extension of the appellant’s time to submit his enrollment certificates, or even cite that provision of § 21.3032(b)(3) in its decision. We need not decide today, and express no opinion as to whether the time limit should have been extended, that good cause was shown, or that, as the appellant contended, § 21.3032(b)(3) was even applicable to the appellant’s claim. The facts of this case, including VA’s delay in adjudicating the service connection claim, certainly give rise to the potential applicability of that subsection and, as the Board acknowledged, the appellant had raised equitable arguments in support of his contention that he should be entitled to benefits for the period between September 1992 and April 1994. Thus, on its face, the Board’s decision appears to be lacking an adequate statement of reasons or bases for its rejection of his equitable argument. See 38 U.S.C. § § 7104(d); Gilbert v. Derwinski 1 Vet.App. 49, 56-57 (1990) (Board is required to articulate reasons and bases for its decision sufficient for the claimant to understand the agency’s decision and the precise basis for that decision and to facilitate judicial review); cf. Schroeder v. West, 212 F.3d 1265 (Fed.Cir.2000) (“[Ojnce a veteran has properly made out a well-grounded claim ... the agency’s duty to assist pursuant to section 5107(a) ... attaches to the investigation of all possible in-service causes of that current disability, including those unknown to the veteran.”). Accordingly, we hold that the Secretary has not met his burden, in the EAJA context, of demonstrating that the Board’s failure to address these questions was substantially justified.
Before this Court, the appellant argues that § 21.3032(b)(3)—
specifically incorporates what the BVA described as “equitable principles” into the legal framework governing the perfection of claims for education benefits. Yet, inexplicably, the Board determined that it could not even reach the issue of whether [the ajppellant’s delay in submitting the required certificates of school enrollment should be excused. As a result, there is no discussion of the issue for appellate review.
Notwithstanding, [the ajppellant argues that he established good cause in his notice of disagreement, when he correctly stated that the delay in the submission of the certificates of school enrollment had been caused by the VA’s delay in adjudicating the issue of service connection for the cause of the veteran’s death. [The ajppellant also correctly noted that the VA never advised him to keep submitting certificates of school enrollment. The BVA did not contest these matters in its decision. Rather, the Board acknowledged the equities surrounding the case, but denied retroactive benefits for want of a legal basis for awarding such benefits. Now that such a legal basis has been uncovered, Appellant respectfully submits that the Board’s decision was not substantially justified.
Reply to Appellee’s Response to EAJA Petition, 14-15. The Secretary’s response to the appellant’s EAJA application discussed neither § 21.3032(b)(3) nor the ade *244 quacy of the Board’s statement of reasons or bases for its decision.
As noted above, once an appellant has alleged a lack of substantial justification, the Secretary has the burden of proving that VA was substantially justified in itfe position. See Looker and Bazalo both supra. This Court has held that the position of the United States was not substantially justified at the administrative level where the Board failed to provide an adequate statement of reasons or bases in its decisions. See, e.g., ZP v. Brown, 8 Vet.App. 303, 304 (1995); Elcyzyn, 7 Vet.App. at 176. The Secretary has offered this Court neither argument nor evidence that the manner in which the Board dealt with this “good cause” argument was substantially justified. Therefore, the Court finds that the Secretary has not met his burden of proving that the position of the United States at the administrative level was substantially justified.
C. Amount of Fees
As the appellant has crossed the statutory threshold for fee eligibility, we turn now to the determination of the amount of fees to which the appellant is entitled. In Hensley, supra, the Supreme Court stated:
Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit_Liti-gants in good faith may raise alternative legal grounds for a desired outcome, and the court’s rejection of or failure to reach certain grounds is not sufficient reason for reducing a fee.
461 U.S. at 435, 103 S.Ct. 1933. Pursuant to the terms of the settlement, the Secretary agreed to pay the appellant all of the benefits sought on appeal. The appellant has therefore achieved complete success on the merits of his claim. Although the Court has rejected the appellant’s argument that the Board’s decision was not substantially justified in its reliance upon the former 38 C.F.R. § 21.4131, in light of Hensley, supra, we find no reason to reduce the amount of fees to be awarded. Moreover, the Secretary does not contend that the hours claimed or the hourly rate are unreasonable. Accordingly, the Court will grant the appellant’s application in its entirety.
III. Conclusion
On consideration of the foregoing, the appellant’s application for an award of attorney fees and expenses is granted. The Court notes that at oral argument the parties agreed that much of the concerns raised by this matter could be avoided if the parties included the issue of attorney fees and EAJA in their settlement negotiations and agreements. The Court certainly agrees that this would be a prudent course and would further the purpose of conserving judicial resources, provided such negotiations do not place the interests of the attorney against the interests of his client. The Court is encouraged by the parties’ representations of a willingness to resolve attorney fee issues in future cases.