Citation Nr: 1326646 
Decision Date: 08/21/13 Archive Date: 08/29/13

DOCKET NO. 11-12 223 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Hartford, Connecticut


THE ISSUES

1. Entitlement to service connection for hypertensive vascular disease.

2. Entitlement to an increased initial rating in excess of 0 percent for chronic adjustment disorder.


REPRESENTATION

Appellant represented by: Allen Gumpenberger


ATTORNEY FOR THE BOARD

Y. Curtis, Associate Counsel





INTRODUCTION

The Veteran served on active duty from August 1967 to August 1970.

This matter is before the Board of Veterans' Appeals (Board) on appeal of an October 2010 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO) in Hartford, Connecticut, which granted service connection for a chronic adjustment disorder, rated at 0 percent, and denied service connection for hypertensive vascular disease.


FINDINGS OF FACT

1. There is no current diagnosis of hypertensive vascular disease. 

2. The Veteran's adjustment disorder has been formally diagnosed, but his symptoms are not severe enough to either interfere with occupational and social functioning or to require continuous medication.


CONCLUSIONS OF LAW

1. The criteria for service connection for hypertensive vascular disease have not been met. 38 U.S.C.A § 1110, 1112, 1131, 1137 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2012).

2. The criteria for an initial rating in excess of 0 percent for chronic adjustment disorder have not been met. 38 U.S.C.A. § 1155, 5107(b) (West 2002& Supp. 2012); 38 C.F.R. §§ 4.130, DC 9440 (2012).




The Veterans Claim Assistance Act of 2000 (VCAA)

Upon receipt of a complete or substantially complete application, VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. VA must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 

A June 2010 letter satisfied the duty to notify provisions. 38 U.S.C.A. § 5103(a) (West 2002); Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002); 38 C.F.R. § 3.159(b)(1) (2012). This letter also notified the Veteran of regulations pertinent to the establishment of an effective date and of the disability rating. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). The Veteran was informed of the need to show the impact of disabilities on daily life and occupational functioning. Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008), rev'd in part sub nom. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). The claim was subsequently readjudicated, most recently in an April 2011 statement of the case. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

In any event, the Veteran has neither alleged nor demonstrated any prejudice with regard to the content or timing of the notice. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (reversing prior case law imposing a presumption of prejudice on any notice deficiency and clarifying that the burden of showing that an error is harmful, or prejudicial, normally falls upon the party attacking the agency's determination). See also Mayfield v. Nicholson, 444 F.3d 1328, 1333-34 (Fed. Cir. 2006).

The Veteran's service treatment records have been obtained; there were no private treatment records in the file. While the Veteran has identified potentially relevant private treatment records, he has not provided the records or the authorization needed for VA to obtain them, despite being asked to do so. 38 U.S.C.A. § 5103A (West 2002), 38 C.F.R. § 3.159 (2012). The Veteran has not indicated, and the record does not contain evidence, that he is in receipt of disability benefits from the Social Security Administration. 38 C.F.R. § 3.159(c)(2) (2012). A VA examination for the psychiatric disorder was provided in August 2010. The VA examiner conducted a thorough interview and described the current severity of the Veteran's adjustment disorder in sufficient detail so that the Board's evaluation is an informed decision. Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). No examination was conducted for the claimed hypertensive vascular disease as the criteria for such under 38 CFR 3.159(c)(4) have not been met.

There is no indication in the record that any additional evidence, relevant to the issue decided, is available and not part of the claims file. See Pelegrini v. Principi, 18 Vet. App. 112 (2004). As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of the case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537 (2006); see also Dingess/Hartman, 19 Vet. App. at 486; Shinseki v. Sanders/Simmons, 129 S. Ct. 1696 (2009).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Principles of Service connection

Service connection will be granted for disability resulting from injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. § 1110 ; 38 C.F.R. § 3.303. If a condition noted during service is not determined to be chronic, then generally a showing of continuity of symptomatology after service is required for service connection. 38 C.F.R. § 3.303(b). Service connection may also be granted for any disease diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

There must be medical evidence of a current disability, medical or lay evidence of in-service incurrence or aggravation of a disease or injury, and medical evidence linking the current disability to that in-service disease or injury. Pond v. West, 12 Vet. App. 341, 346 (1999); Hickson v. West, 12 Vet. App. 247, 253 (1999).

A service connection claim must be accompanied by evidence which establishes that the claimant currently has the claimed disability. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); Rabideau v. Derwinski, 2 Vet. App. 141, 144 (1992).

Facts

In a June 2010 claim for compensation, the Veteran indicated that he received treatment for hypertensive vascular disease from Stephen Kay and Dr. Shammugam. Private medical records from Stephen Kay and Dr. Shammugam were not included with the Veteran's claim. In a June 2010 VCAA letter, the RO provided authorization forms to the Veteran in an effort to obtain the records. The RO also advised the Veteran that he may wish to obtain and send the relevant records himself. 

The RO did not receive a response from the Veteran and there was no other evidence available for review relating to the Veteran's claim for hypertensive vascular disease. The claim was subsequently denied in October 2010 because the medical evidence of record failed to show a current diagnosis of hypertensive vascular disease.

In a November 2010 notice of disagreement, the Veteran's representative requested an examination and indicated that he would submit a medical opinion for the purpose of establishing service connection for hypertensive vascular disease. To date, no medical evidence has been received from the Veteran. 

Analysis

The first required element of a successful service connection claim is a current disability, but a current diagnosis of hypertensive vascular disease has not been established. Nor does the record contain any objective medical evidence of any complaints, symptoms, or treatment for hypertensive vascular disease, either in-service or post-service. Absent proof of a current disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

To the extent that the Veteran's allegation of entitlement to service connection is a statement that he has a current diagnosis of hypertensive vascular disease, he is not competent to provide such a diagnosis. See Jandreau v. Shinseki, 23 Vet. App. 12 (2009). Hypertensive vascular disease is a complex cardiovascular disorder that requires medical expertise and a clinical examination to diagnose, unlike disorders such as flat feet, varicose veins, and ringing in the ears which are capable of lay observation. Id. 

As has been pointed out by the Veteran's representative, the Veteran has not been afforded a medical examination in connection with his claim for service connection for hypertensive vascular disease. However, as there is no evidence of hypertensive vascular disease in service and no competent evidence, either lay or medical, showing a current diagnosis of, or treatment for, hypertensive vascular disease, no examination is necessary. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

There is no competent evidence that the Veteran has or has had hypertensive vascular disease at any time during the pendency of his claim. 

The preponderance of the evidence is against a finding of service connection for hypertensive vascular disease; there is no doubt to be resolved; and service connection is not warranted.

Principles of Increased Rating Claims

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the appellant working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of the two disability evaluations shall be applied, the higher is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7.

The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings." Fenderson v. West, 12 Vet. App. 119, 126-27 (1999); Hart v. Mansfield, 21 Vet. App. 505, 519 (2007). 

Rating Criteria:

The Veteran is currently assigned a 0 percent rating for a service-connected chronic adjustment disorder under 38 C.F.R. 4.130, Diagnostic Code 9440.

Under this code, a 0 percent evaluation is assigned when a mental condition has been formally diagnosed but symptoms are not severe enough either to interfere with occupational and social functioning or to require continuous medication.

A 10 percent evaluation is warranted when a mental condition results in occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during period of significant stress, or; symptoms controlled by continuous medication.

A 30 percent evaluation is warranted when there is occupational and social impairment with occasional decrease in work efficiency and intermittent period of inability to perform occupational tasks due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks, chronic sleep impairment, or mild memory loss.

Higher ratings are possible for more severe manifestations. 





Facts

On VA examination in August 2010, the Veteran reported experiencing occasional thoughts about Vietnam, but indicated they are rarely intrusive or distressing in nature. The Veteran prefers not to sit with his back to the door and described mild startled reactions to loud noises or other unexpected events. The Veteran also reported experiencing nightmares relating to the Tet offensive on a monthly basis, but indicated that overall his sleep is decent or very good. Additionally, the Veteran reported attending Alcoholics Anonymous approximately thirty years ago, but otherwise denied a history of mental health treatment or use of psychotropic medications. 

The Veteran has remained active both socially and vocationally. The Veteran reported a close and supportive relationship with his wife, children, and grandchildren. Additionally, the Veteran reported being employed more or less consistently over the years. Specifically, the Veteran reported working as a driver for Electric Wholesalers for the past six years and denied any difficulties on the job.

The VA examiner found no evidence of generalized avoidance, decreased interest in activities, emotional numbing, or amnesia during the examination. The examiner assigned a Global Assessment of functioning (GAF) score of 70, which is indicative of the ability to maintain meaningful interpersonal relationships with some mild symptoms. The examiner opined that the Veteran has experienced some mild persisting problems such as occasional nightmares, mild avoidance, and mild startle reaction due to his experiences in Vietnam. Signifcantly, the examiner opined that the Veteran's symptoms have not caused an impairment in either social or vocational functioning.

Analysis

The Veteran maintains that a higher evaluation is warranted. Specifically, the Veteran asserts that mild persistent symptoms including mild startle, mild avoidance, and occasional nightmares warrant a 30 percent evaluation. Notably, the evidence shows that the Veteran's adjustment disorder has produced a few of the symptoms similar to those listed in the 30 percent evaluation criteria. Symptoms alone, however, are not sufficient to warrant a higher rating. Rather, the Veteran's symptoms must result in occupational and social impairment or require continuous medication in order to warrant an increased evaluation. Here, a higher rating is not warranted because there is no objective evidence that the Veteran experiences any occupational and social impairment or requires continuous medication.

On VA examination in August 2010, the Veteran reported an active social and vocational life that included a close relationship with his family and several years of working as a driver for Electric Wholesalers without difficulty. Although the VA examiner reported that the Veteran experiences symptoms such as occasional nightmares, mild avoidance, and mild startle, the examiner found no evidence that the aforementioned symptoms resulted in decreased interest in activities or emotional numbing. Based on an interview with the Veteran, the VA examiner concluded that the Veteran's symptoms did not cause an impairment in either social or vocational functioning. There is no other evidence of record indicative of occupational or social impairment for any time during the course of the appeal.

With respect to medication, the record does not indicate a history of mental health treatment. In August 2010, the Veteran denied ever being prescribed psychotropic medications. Aside from attending Alcoholics Anonymous meetings approximately thirty years ago, the Veteran denied a history of mental health treatment. There is no evidence that the Veteran required continuous medication to treat the symptoms of his adjustment disorderat any time during the course of the appeal

Due consideration has been given to Hart v. Mansfield, 21 Vet. App. 505 (2007); however, a higher evaluation is not warranted for any portion of the time period under consideration. The preponderance of evidence is against the claim for an initial rating in excess of 0 percent; there is no doubt to be resolved; and a higher rating is not warranted.

The Board has also considered whether referral for consideration of an extraschedular rating is warranted.

The threshold factor for extraschedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular ratings for that service-connected disability are inadequate. 

The Veteran's service-connected adjustment disorder is primarily manifested by occasionally distressing thoughts and nightmares that cause no impairment in either social or vocational functioning. The Veteran's disability picture is contemplated by the rating schedule, the assigned scheduler evaluation for the service-connected adjustment disorder is adequate, and referral is not required. Thun v. Peake, 22 Vet. App. 111 (2008); 38 C.F.R. § 3.321(b)(1).

A request for a total disability rating based on individual unemployability due to service-connected disability (TDIU), whether expressly raised by a claimant or reasonably raised by the record, is an attempt to obtain an appropriate rating for disability or disabilities, and is part of a claim for increased compensation. There must be cogent evidence of unemployability in the record. Rice v. Shinseki, 22 Vet. App. 447 (2009). Rice is inapplicable as there is no evidence of unemployability. Rather, the Veteran reported that he is currently working as a driver for Electric Wholesalers.


ORDER

Entitlement to service connection for hypertensive vascular disease is denied.

Entitlement to an increased initial rating in excess of 0 percent for chronic adjustment disorder is denied.

____________________________________________
RONALD W. SCHOLZ
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs